**Penny SINGLETON, Plaintiff,**

v.

**Alon CORY and F. Ray Marshall, Secretary of Labor, and Department of Labor of the United States of America, Defendants.**

**No. 78 Civ. 4799.**

United States District Court, S. D. New York.

Oct. 27, 1978.

Richard C. Stein, Evan Sarzin, Stein, Davidoff, Malito & Katz, New York City, for plaintiff.

Marjorie A. Silver, Sp. Asst. U. S. Atty., S. D. N. Y., New York City, William W. Taylor, III, Dept. of Labor, Washington, D. C., Diane J. Zwerling, U. S. Dept. of Labor, New York City, Saul I. Weinstein, Jay C. Carlisle, II, Nierenberg, Zeif & Weinstein, New York City, for Alan Cory.

Amy Gladstein, Gladstein, Meyer, Reif & Siegel, Brooklyn, N. Y., for Union.

## OPINION

GRIESA, District Judge.

This is an action relating to the election of officers in a labor organization. Plaintiff is presently the Executive President of the American Guild of Variety Artists ("AGVA"). Defendant Cory is a contender for the office of Executive President. The other defendants are the Secretary of Labor and the Department of Labor.

On October 13, 1978 I granted plaintiff's application for a temporary restraining order, which had the effect of keeping plaintiff in office and preventing defendant Cory from taking office.

Plaintiff has moved for a preliminary injunction. Defendants have moved to dis-

miss the action for lack of subject matter jurisdiction.

Plaintiff's motion for a preliminary injunction is denied and the temporary restraining order is vacated. Defendants' motion to dismiss the action is denied.

## I.

A regular election of the AGVA was conducted in August or September 1977, as a result of which plaintiff was elected Executive President. Defendant Cory made a complaint about irregularities in the election under 29 U.S.C. § 482(a).[1] That statute provides, among other things, that a member of a labor organization may file a complaint with the Secretary of Labor challenging an election of officers. The statute provides that the challenged election shall be presumed valid, and the elected officer shall take office, pending the outcome of any proceedings instituted by the Secretary of Labor. Subsection (b) authorizes the Secretary to file suit to obtain an order for a new election. Subsection (c) provides, among other things, that a district court, upon a proper showing, may order a new election under the supervision of the Secretary of Labor, and following such election, upon the certification of the Secretary, shall declare the certified persons to be officers of the labor organization.

The Cory complaint did not result in the carrying out of the full litigation mecha-

[1]. The full text of 29 U.S.C. § 482 is as follows:

§ 482. Enforcement

Filing of complaint; presumption of validity of challenged election

(a) A member of a labor organization—

(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or

(2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation,

may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 of this title (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers). The challenged election shall be presumed valid pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide.

Investigation of complaint; commencement of civil action by Secretary; jurisdiction; preservation of assets

(b) The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary and in accordance with the provisions of this subchapter and such rules and regulations as the Secretary may prescribe. The court shall have power to take such action as it deems proper to preserve the assets of the labor organization.

Declaration of void election; order for new election; certification of election to court; decree; certification of result of vote for removal of officers

(c) If, upon a preponderance of the evidence after a trial upon the merits, the court finds—

(1) that an election has not been held within the time prescribed by section 481 of this title, or

(2) that the violation of section 481 of this title may have affected the outcome of an election,

the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization. The Secretary shall promptly certify to the court the names of the persons elected, and the court shall thereupon enter a decree declaring such persons to be the officers of the labor organization. If the proceeding is for the removal of officers pursuant to subsection (h) of section 481 of this title, the Secretary shall certify the results of the vote and the court shall enter a decree declaring whether such persons have been removed as officers of the labor organization.

Review of orders; stay of order directing an election

(d) An order directing an election, dismissing a complaint, or designating elected officers of a labor organization shall be appealable in the same manner as the final judgment in a civil action, but an order directing an election shall not be stayed pending appeal.

nism. Instead, plaintiff entered into an agreement with the Secretary of Labor dated April 10, 1978, under which there would be new nominations and a new election under the supervision of the Department of Labor. This process was to be completed prior to August 31, 1978. The agreement specifically provided:

"The union further agree [sic] that any dispute, arising during the course of the supervised election, as to the legality or practicability of any election procedure will be decided by the representative of the Secretary of Labor."

On June 1, 1978 a conference was held attended by plaintiff and other officers of the union, defendant Cory, and representatives of the Department of Labor. The chairman of the conference was Walda Lee Lyons, Compliance Officer of the Department. The purpose of the conference, according to the minutes, was "to ascertain and establish the procedures, rules, and standards for the conduct of the nominations and election so that they will be held in a fair and orderly manner, consistent with the Constitution and By-Laws of" the AGVA. The minutes of the conference contained a section entitled "Procedures, Rules and Standards for the Conduct of the Nominations and Elections." It was established that eligibility to hold office as an officer would be according to Article X of the AGVA's Constitution—i. e., the person must be a senior member of the AGVA for at least three years "immediately prior to his nomination." It was noted that, in order to be elected an officer, the person must qualify under Article XI of the Constitution. Another portion of the minutes is entitled "Nomination Provisions." Duties and procedures for nomination of officers were established at the conference. A section of the minutes entitled "Election Provisions" provided that there could be campaign mailings "by candidates" and that prior to August 4, 1978 ballots would be distributed to members through the American Arbitration Association. It was agreed that ballots, in order to be counted, should be received before 5:00 p. m. August 28, 1978. Article XI of the AGVA Constitution, referred to

above, is entitled "Elections for Officers", which provides a procedure for nominating candidates for officer positions.

In early August campaign literature was sent out by both plaintiff's slate and the Cory slate. The Cory slate included, among other persons, Rod McKuen as a candidate for Honorary President and Tony Martin as a candidate for Honorary First Vice President. The Cory material stated that the voters should write in the names of McKuen and Martin. Neither McKuen nor Martin had been nominated.

According to plaintiff's affidavit, plaintiff had a discussion on or about August 9 with Walda Lyons, the Compliance Officer, about the inclusion of Rod McKuen and Tony Martin as write-in candidates on the Cory slate. Plaintiff argued to Ms. Lyons that the AGVA Constitution did not permit write-in votes, and that write-ins had never been permitted in an AGVA election. Plaintiff further contended to Ms. Lyons that it would be unfair to plaintiff to permit the election to go forward with the write-in candidates, because plaintiff's campaign literature had already been printed and distributed and there was no opportunity for further literature of plaintiff to be prepared. Ms. Lyons advised plaintiff that her superiors at the Department of Labor had directed her to rule that write-in votes could be used in the election. This ruling was confirmed in a letter dated September 1, 1978 to plaintiff from Richard G. Hunsucker of the Department of Labor. This letter stated that there was no legal basis for disallowing write-in votes, since the AGVA Constitution did not explicitly prohibit such votes.

The new election was completed on August 29, 1978. Defendant Cory prevailed over plaintiff by a vote of 652 to 475. Rod McKuen was elected Honorary President and Tony Martin was elected Honorary First Vice President. Plaintiff alleges that out of the 652 ballots cast for Cory, 256 included write-in votes for Rod McKuen or Tony Martin or both. Plaintiff contends that these 256 ballots were tainted by the

wrongful inclusion of the write-in candidates, and that without these tainted ballots Cory would not have been elected.

Following the tabulation, C. Dartazse Jackson, Supervising Compliance Officer of the Department of Labor, ruled that Tony Martin was ineligible to hold office since he did not comply with the three-year membership requirement of Article X of the AGVA Constitution. However, the problem of the Honorary First Vice President was solved because there was another write-in candidate who had received 1.8% of the vote. The Department of Labor was agreeable to his installation. Exactly when and how Mr. Jackson (to say nothing of Alon Cory) came to the realization that Tony Martin was ineligible is not yet revealed. Neither one of these persons has submitted an affidavit in connection with the present motions.

Plaintiff urges that there is a serious question as to whether Rod McKuen or Tony Martin ever gave their consent to inclusion on the Cory slate. Plaintiff has submitted an affidavit of one Bernard King, who quotes an alleged conversation with Tony Martin on September 26, 1978 in which Martin is said to have denied giving consent to run for AGVA office on the Cory slate of candidates. However, counsel for defendant Cory have furnished the court with what purport to be consent letters from Rod McKuen and Tony Martin. The circumstances of these documents have not yet been developed in the present action. However, the purported letter of Tony Martin is dated either June 2 or June 4, 1978. If the letter is authentic, it means that it was probably solicited by Cory on or before June 1, 1978, the date of the meeting at which the ground rules for the new election were established. Cory made no mention of his plan for write-in candidates at the June 1 meeting. One problem with the purported letters is that they have identical texts, indicating they were drafted by the same person. Also, they both expressed thanks for invitations to serve as Honorary President.

On September 8, 1978 counsel for plaintiff wrote the Department of Labor complaining of irregularities with respect to the new election. The principal complaints related to the inclusion of the write-in candidates Rod McKuen and Tony Martin.

On October 11, 1978 the Department of Labor wrote counsel for plaintiff, stating that an investigation had been conducted, and that it had been determined that plaintiff's complaint was without merit. The Department stated that no further action would be taken based upon the complaint. A Statement of Reasons was provided.

The following is a brief summary of some of the points made in the Statement of Reasons:

(a) There is no provision in the union's Constitution prohibiting write-in votes, and in the absence of such a prohibition, the Department of Labor followed a long-standing policy to permit write-in votes.

(b) The write-in candidate Tony Martin, who gained the most votes for Honorary First Vice President, was ineligible for that post. However, the second place winner for Honorary Vice President, also a write-in candidate, is eligible and will be installed.

(c) With regard to the allegation that plaintiff was notified of the Department of Labor's approval of write-in votes too late to distribute effective campaign material, the "fact that the incumbents were unable to change their literature does not constitute a violation of the Act."

(d) With regard to the allegation that Tony Martin's name was used on the Cory slate without his consent, this "would simply have been an untruthful statement which could have been rebutted by Cory's opponent;" it would not have been a "violation of the Act."

(e) Even if write-in votes were improper, only the write-in votes themselves would have been voided and not the entire ballots.

In the meantime, plaintiff had filed an action in Supreme Court, New York County, and had obtained an order from that court dated October 1, 1978 preventing Cory from taking office.

The present action in this court was filed October 12, 1978.

The action in Supreme Court, New York County, has been terminated.

## II.

Plaintiff asserts that she has a right to review the actions of the Department of Labor in connection with the new election, and that such right of review is under 5 U.S.C. § 704,[2] which provides in part:

"Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."

Plaintiff further contends that she has made a sufficient showing of dereliction of duty on the part of the Department of Labor, together with irregularities in connection with the new election, to entitle her to a preliminary injunction.

The original position taken by defendants in support of their motion to dismiss for lack of subject matter jurisdiction was that final agency action had not occurred within the meaning of 5 U.S.C. § 704. Defendants contend that there would be no such final agency action until after defendant Cory was installed and the Department of Labor had certified the results of the election.

Defendants now concede that the Department of Labor's October 11, 1978 letter and Statement of Reasons constitute final agency action within the meaning of 5 U.S.C. § 704. Defendants contend, however, that, by virtue of 29 U.S.C. § 482 the court lacks "jurisdiction" to enter any order preventing the installation of defendant Cory as Executive President.

## III.

The first question to be dealt with is defendants' current argument under 29 U.S.C. § 482.

Subsection (a) is relied upon strongly by defendants, because it provides that following a complaint by a labor organization member to the Department of Labor, and pending the ultimate resolution of that complaint, the challenged election shall be presumed valid, and in the interim the affairs of the organization shall be conducted by the officers elected. Defendants urge that, under this subsection, defendant Cory, who was the winner in the new election, must take office, and cannot be prevented from doing so by any court order. The difficulty with this argument is that subsection (a) appears to apply, at least primarily, to complaints relating to elections which have not been supervised by the Department of Labor. There is at least a question as to whether the provisions of subsection (a), permitting officials elected in a challenged election to take office pending complaint proceedings, apply to a Department of Labor supervised election such as the one carried out in the present case.

Subsections (b) and (c) provide for suit by the Department of Labor in a district court, a new election if the court so orders under the supervision of the Department of Labor, and the certifying of the results of the new election by the Department of Labor to the court, after which the court enters a decree declaring that the certified persons are the officers of the organization.

Subsections (b) and (c) do not literally cover the present case, because there has been no court-ordered election, and there is no occasion for certifying the results of the election to a court for the purpose of a court decree. In the present case the new election, carried out under the supervision of the Department of Labor, was the result of an agreement, which was not accompanied by any lawsuit under Section 482. There is no express mandate in the statute requiring that the officers elected in a Department of Labor supervised election must immediately take office, and cannot be prevented under any circumstances from taking office by court order. Indeed, if the actual procedures of subsections (b) and (c) regarding supervising elections under court order are carried out, the newly elected officers cannot take office until there is a court decree permitting them to do so.

2. It is unnecessary to deal with plaintiff's contention that 29 U.S.C. § 526 applies.

Thus there are substantial problems in applying 29 U.S.C. § 482 to the present case. There is no express authorization of a particular court remedy in the present circumstances, nor is there any express limitation or prohibition of any particular court remedy.

In any event, these questions do not go to the subject matter jurisdiction of the court, as far as the present case is concerned. Basic subject matter jurisdiction exists under 5 U.S.C. § 704. The questions which defendants are now raising go to the merits of the claim, not to jurisdiction.

For the foregoing reasons, defendants' motion to dismiss the action for lack of subject matter jurisdiction is denied. It should be noted that in the memorandum of the federal defendants dated October 23, 1978 there is an argument that the action should be dismissed because plaintiff has made an insufficient showing to justify overruling the action of the Department of Labor in approving the new election. This is in effect an argument for summary judgment. The matters raised in this argument have not been sufficiently developed for decision.

### IV.

This leaves for decision plaintiff's motion for preliminary injunction.

■ The criteria to be applied are set forth in *Sonesta International Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2d Cir. 1973):

"The settled rule is that a preliminary injunction should issue only upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief."

■ Plaintiff has a difficult burden in connection with the merits of her case. Her only right of action is to review the actions of the Department of Labor. This right of review is most limited. The con-

trolling case is *Dunlop v. Bachowski,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975). While that case involves different facts (judicial review of a decision of the Department of Labor not to file suit to overturn an unsupervised election), the principles stated by the Supreme Court clearly apply broadly to cases involving the relative role of the courts and the Department of Labor in problems arising under the statute here involved, the Labor-Management Reporting and Disclosure Act. The Department is required to accompany any decision with a sufficient statement of reasons. When such a statement is provided, court review should ordinarily be confined to examination of the statement; and there should be judicial interference with Department action only where it is so irrational as to be arbitrary and capricious. Trial-type hearings should be avoided except in the rare case. However, such hearings may be justified when the Department completely abrogates its enforcement responsibilities, acts in a blatantly discriminatory manner, or otherwise proceeds in a manner clearly defiant of the statute. 421 U.S. at 572–74, 95 S.Ct. 1851.

■ It is necessary to apply the preliminary injunction criteria of *Sonesta* in light of the rules laid down in *Dunlop.* There are legitimate questions raised in this case by plaintiff's claim that the Department of Labor's action or inaction amounted to a dereliction of duty and lacked reasonable or rational basis. There is considerable merit, to say the least, in plaintiff's contention that the rules to be followed in the new election were those established at the June 1, 1978 conference. According to the minutes of that conference, the AGVA constitution was to govern in regard to qualification of persons to stand for election.

It is true that the AGVA constitution does not literally say that write-in votes are prohibited. However, there is much merit to plaintiff's argument that the constitutional provisions provide for nomination as the exclusive path to candidacy for officer positions, and that the constitution plainly implies that write-in votes are not permit-

ted. Certainly the rules laid down at the June 1, 1978 meeting referred to the nomination path, and made no provision for write-in candidates.

The so-called "Statement of Reasons" of October 11, 1978 does not deal with these problems in a satisfactory manner. Perhaps the Department of Labor can come forward with an adequate explanation; but none has yet been made.

In addition, the Statement of Reasons has given nothing more than a brush-off to the problem of Cory putting forward on his slate the celebrity Tony Martin, who was immediately found to be unqualified at the time the votes were tallied.

Despite what has just been said, I am constrained to deny the application for preliminary injunction. Although plaintiff has raised substantial questions, plaintiff's submissions do not at this juncture rise to the level of meeting the strict standard laid down in *Dunlop*. I cannot even predict the probabilities of how the merits of the case will stand after the Department of Labor has had an opportunity to supplement and further explain the October 11, 1978 Statement of Reasons, and after the court has received whatever other additional proof is appropriate. Therefore I cannot say that plaintiff has shown probable success on the merits within the meaning of *Sonesta*.

As to the second branch of *Sonesta*, I would hold that plaintiff has shown sufficiently serious questions going to the merits to make them a fair ground for litigation. However, I cannot find that a balance of hardships tips decidedly toward plaintiff in connection with the granting of preliminary relief. As between plaintiff and defendant Cory, the question is simply which one will hold the office of Executive President during the remaining time needed for this litigation. It is basically the same hardship for each to be held out of that office. Plaintiff has alleged the possibility of irreparable harm if defendant Cory assumes office, claiming that Cory will direct the termination of certain litigation against him

and cause the destruction of records showing certain alleged wrongdoing by him. Cory's attorneys have given assurances that, during the pendency of this litigation, no steps will be taken to terminate the litigation referred to, and no relevant records will be destroyed.

 There is another reason for denying the preliminary injunction. As indicated earlier, the provisions of 29 U.S.C. § 482(a) do not appear to be literally applicable to defendant Cory—specifically, the requirement that elected officers are to take office during the pendency of complaint proceedings. However, the statute does appear to indicate a Congressional purpose, in a general way, to have the results of a labor union election carried out promptly without being delayed by a court proceeding. As of now, the AGVA vote is in favor of Cory. That election is obviously contested. However, Cory's installation should not be delayed further pending the outcome of the present case.

### Conclusion

For the foregoing reasons, defendants' motion to dismiss for lack of subject matter jurisdiction is denied. Plaintiff's motion for a preliminary injunction is denied. The temporary restraining order is vacated.

In connection with defendant Cory's representations, referred to above, he is directed to submit to the Court an affidavit formally embodying his commitments.

So ordered.